UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 95-00084-CR-JAL

UNITED STATES OF AMERICA,

    Plaintiff,

v.

EVELYN CECILIA BOZON PAPPA,

    Defendant.

_____/

**EVELYN CECILIA BOZON PAPPA'S MOTION FOR COMPASSIONATE RELEASE**

Evelyn Cecilia Bozon Pappa, through undersigned counsel, in the context of the coronavirus pandemic and its pervasive effect on the health and safety of people who are incarcerated, respectfully requests this Court grant Ms. Bozon compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) to modify her sentence to time served.

Former Assistant United States Attorneys Paul E. Pelletier and Jacqueline M. Arango, who prosecuted Ms. Bozon, support her release. (Ex. 1: Letter from Paul E. Pelletier to Judge Lenard; Ex. 2: Letter from Pelletier, Arango, and Roche Supporting Release). Former Special Agent with U.S. Immigration and Customs Enforcement (ICE) and U.S. Customs Service Tobias Roche, who arrested Ms. Bozon, supports her release. (Ex. 2).

If Ms. Bozon receives a time-served sentence, ICE Enforcement and Removal Operations (ERO) will promptly remove Ms. Bozon from the United States back to Colombia, pursuant to the arrangements with the ICE ERO's Miami Field Office that are in place, including her administrative removal order. (Ex.3: Email from ICE ERO Miami Acting Field Office Director).

**I.      Introduction**

Ms. Bozon is a 59-year-old grandmother, mother, and daughter. She suffers from a combination of serious health problems—including obesity, history of smoking, history of hypertension, hyperthyroidism, idiopathic peripheral autonomic neuropathy, history of kidney stones and urinary tract infection, vitamin D deficiency, history of acute upper respiratory infections, and history of vaginal bleeding and endometrial concerns. (Ex. 4: Medical Records from BOP FCI Tallahassee 2017-2021). Her health conditions, along with her advanced age and race/ethnicity, increase her risk of severe illness if she contracts COVID-19.

Ms. Bozon is currently serving a life sentence at FCI Tallahassee. She has been incarcerated for 26 years. FCI Tallahassee has consistently had the highest rate of COVID-19 cases in the nation in January and February 2021.[1] Ms. Bozon received the first dose of the vaccine on January 21, 2021. (Ex. 4) However, due to her obesity, she is still at risk of contracting COVID-19. The continuous outbreaks at FCI Tallahassee further increase her likelihood of contracting the virus.[2]

Upon her release from prison, ICE ERO will allow Ms. Bozon to avoid immigration detention and expedite her removal to Colombia. Ms. Bozon's 97-year-old mother, her children, and her grandchildren live in Colombia and they will ensure she has a safe and healthy place to stay upon her return.

---

[1] BOP, COVID-19, https://www.bop.gov/coronavirus.
[2] CDC, Obesity Worsens Outcomes from COVID-19 (Jan. 8, 2021), https://www.cdc.gov/obesity/data/obesity-and-COVID-19.html; Sarah Varney, *America's Obesity Epidemic Threatens Effectiveness of Any COVID Vaccine*, Kaiser Health News (Aug. 6, 2020), https://khn.org/news/americas-obesity-epidemic-threatens-effectiveness-of-any-COVID-vaccine.

**II.     Relevant Procedural History and Background**

On February 13, 1995, Ms. Bozon was arrested for her involvement in a drug trafficking enterprise. (PSI at 2). She was 33 years old. On March 11, 1997, a jury found Ms. Bozon guilty of nine counts, which included conspiracy to import and possess with intent to distribute cocaine, possession and importation of cocaine, and money laundering. (DE 323). On September 4, 1997, this Court sentenced her to life imprisonment and five years supervised release as to Counts 1 through 8, and a concurrent 20-year sentence with three years of supervised release as to count 9.[3] (DE 360). Ms. Bozon did not have any prior criminal history and was convicted of nonviolent offenses. (PSI ¶ 41-46).

Ms. Bozon's ex-husband, Carlos Horacio Romero-Paez, was charged with leading the conspiracy to smuggle cocaine into the United States with Ms. Bozon, (DE 153; PSI 22). Mr. Romero evaded authorities, (PSI ¶ 50), and he was killed in Colombia. Mr. Romero was never arrested for his crimes. (DE 349).

When Ms. Bozon was married to Carlos Romero, he was "very abusive mentally, physically and sexually." (PSI ¶ 52). The PSI quoted Dr. Merry S. Haber's psychological evaluation that determined, "She had no ability to have been assertive with him, and it is clear that she was unable to extricate herself from his control. . . . Ms. Bozon clearly suffers from a Battered Woman Syndrome." (PSI ¶ 63).

Since she has been incarcerated, Ms. Bozon has focused on rehabilitation. She earned her GED, completed self-empowerment classes, lived in the Honor Unit, and worked full time. (Ex. 5 at 19-37: 2018 Clemency Petition; Ex. 6 at 9-11: 2020 Supplemental Clemency Petition).

---

[3] At the time of Ms. Bozon's sentencing, the federal sentencing guidelines were mandatory. *See United States v. Booker*, 543 US 220 (2005).

### III.     Ms. Bozon has met the statutory exhaustion requirement

Ms. Bozon has satisfied the statutory exhaustion requirement in § 3582(c)(1)(A). On July 17, 2020, Ms. Bozon submitted her request for compassionate release to the FCI Tallahassee Warden. On September 25, 2020, the Warden conceded that Ms. Bozon has a "chronic medical condition," but still denied Ms. Bozon's request under BOP Program Statement #5050.50. (Ex. 7: Warden's Response). Because more than 30 days have elapsed since Ms. Bozon's request to the Warden, this Court has jurisdiction to consider Ms. Bozon's motion.

### IV.     Ms. Bozon's combination of current and historical serious health conditions increases her risk of severe illness from COVID-19 and meet the extraordinary and compelling reasons standard to warrant a sentence modification

The Bureau of Prisons and the Centers for Disease Control and Prevention recognize Ms. Bozon's comorbidity factors, including obesity, history of smoking, advanced age, ethnicity, and other health concerns, increase her risk of severe illness.[4] According to the CDC, "Severe illness means that the person with COVID-19 may require: hospitalization, intensive care, or a ventilator to help them breathe, or they may even die."[5] Studies have also found that patients with multiple comorbidities, like Ms. Bozon, have "greater disease severity" and poorer outcomes.[6] "For high risk patients who do not die from COVID-19, a prolonged recovery is expected to be required, including the need for extensive rehabilitation for profound deconditioning, loss of digits,

---

[4] Ms. Bozon takes several medications to address her many health ailments, including Levothyroxine (hyperthyroidism), Cholecalciferol (vitamin D), Meloxicam (chronic arthritic pain), Acetaminophen (chronic pain), and Aspirin (chronic pain). (Ex. 4).
[5] CDC, Older Adults, Dec. 13, 2020, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.
[6] *See, e.g.*, Wei-jie Guan, et al., Comorbidity and Its Impact on 1590 Patients with COVID-19 in China: A Nationwide Analysis; *Eur. Respir. J.*, (May 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7098485.

neurological damage, and loss of respiratory capacity."[7] Ms. Bozon's medical conditions demonstrate extraordinary and compelling circumstances to warrant compassionate release.

      *A.      Ms. Bozon's Body Mass Index between 34.1 and 35.1 meets the definition of obesity and renders her at increased risk of severe illness from COVID-19*

A person with a body mass index (BMI) of 30 or above is obese and is at increased risk of severe illness from COVID-19.[8] Ms. Bozon is 4' 11" and weights approximately 169 pounds. (Ex. 4 at 352). Her BMI is 34.1. Unfortunately, Ms. Bozon is obese. Worse, her BMI varies between 34 and 35, putting her in the <u>morbid obese threshold range</u>.[9] Along with her age of 59 and other health conditions, the CDC has deemed Ms. Bozon's level of obesity an increased health risk. Her obesity has been associated with other health problems, including her history of hypertension.[10]

The Government has conceded that a BMI of 30 or above constitutes an extraordinary and compelling reason warranting a reduction in sentence.[11] Courts around the country, including in

---

[7] *See* Declaration of Dr. Jonathan Louis Golob, Assistant Professor at University of Michigan School of Medicine, Dembele v. Prim, 20-02401, ¶ 4 (ND Ill. Apr. 17, 2020), https://www.aclu-il.org/sites/default/files/field_documents/declaration_of_golob.pdf; *see also* Ling Mao, et al., Neurologic Manifestations of Hospitalized Patients With Coronavirus Disease 2019 in Wuhan, China, *JAMA Neurol.*, (Apr. 10, 2020), https://jamanetwork.com/journals/jamaneurology/fullarticle/2764549.

[8] CDC, People with Certain Medical Conditions: Overweight, Obesity and Severe Obesity, updated Feb. 3, 2021, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity.

[9] https://columbiasurgery.org/conditions-and-treatments/overweight-and-obesity

[10] Medical professionals documented Ms. Bozon's high blood pressure readings as recently as July 2020. (Ex. 4 at 351); *see also* American Heart Association, https://www.heart.org/en/health-topics/high-blood-pressure/understanding-blood-pressure-readings. The CDC has consistently identified hypertension as a disease that may increase an individual's risk of becoming severely ill from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

[11] *See, e.g., United States v. Steven Cole*, 1:18-CR-00167-ELH (District of Maryland) (DE 95).

this district,[12] have held that obesity qualifies as an extraordinary and compelling basis for compassionate release.[13] This Court should do the same.

---

[12] *United States v. Woolley*, No. 19-cr-80093-RLR, D.E. 111 (S.D. Fla. Aug. 20, 2020) (granting compassionate release in light of COVID-19 when defendant suffered from, among other medical conditions, obesity); *U.S. v. Siegert*, 13-cr-800009-CMA, D.E. 53 (S.D. Fla. August 13, 2020) (same); *U.S. v. Weems*, 18-cr-60185-BB, D.E. 187 (S.D. Fla. Aug. 7, 2020) (same); *U.S. v. Minsal*, 18-cr-20597-UU, D.E. 46 (S.D. Fla. Aug. 5, 2020) (same); *U.S. v. Huarte*, 11-cr-20587-RNS, D.E. 1584 (S.D. Fla. July 31, 2020) (same); *U.S. v. Israel*, 95-cr-314-JAL, D.E. 463 (S.D. Fla. July 29, 2020) (same); *U.S. v. Joseph*, No. 18-cr-20700-UU, D.E. 244 (S.D. Fla. July 29, 2020) (same); *U.S. v. Curington*, 12-20115-CR-MGC, D.E. 645 (S.D. Fla. July 7, 2020) (same); *U.S. v. Firebaugh*, 16-cr-20341-UU, D.E. 57 (S.D. Fla. June 22, 2020) (same); *U.S. v. Feucht*, 11-cr-60025-DMM, D.E. 53 (S.D. Fla. May 28, 2020) (same).

[13] *See* Federal Defender's Office compilation: *United States v. Gonzalez*, No. 17-CR-2054-GPC, 2021 WL 37728, at *5 (S.D. Cal. Jan. 5, 2021) (granting motion for reduction in sentence because "Gonzalez's obesity puts him at increased risk of severe illness should he contract COVID-19"); *United States v. Miles*, No. 2:17cr127, 2020 WL 7646415, at *2 (E.D. Cal. Dec. 23, 2020) (holding that "obesity alone can support a motion for compassionate release"); *United States v. Tomlinson*, No. CR1701075003, 2020 WL 7404639, at *2 (D. Ariz. Dec. 17, 2020) ("Given the increase of COVID-19 infections at FCI-Sheridan and the CDC's warning that obesity is one of the most serious risk factors for severe illness from the virus, the Court finds, and the government now concedes (Doc. 219 at 1), that Defendant has shown extraordinary and compelling reasons for compassionate release."); *United States v. Gonzalez*, No. 3:19cr90, 2020 WL 7024905, at *5 (D. Conn. Nov. 30, 2020) ("[B]ecause Mr. Gonzalez has established that his obesity alone may constitute an extraordinary and compelling reason for release, and that his obesity increases the risk that he will experience severe illness should he contract COVID-19, Mr. Gonzalez has established an extraordinary and compelling reason for release…."); *United States v. Pelichet*, No. 19cr40033, 2020 WL 7053309, at *8 (D.S.D. Nov. 24, 2020) (granting release after finding that "Pelichet's obesity alone elevates his risk of severe illness from COVID-19"); *United States v. Tamasoa*, No. 2:15cr124, 2020 WL 6700416, at *3 (E.D. Cal. Nov. 13, 2020) (granting release: "District courts within the Ninth Circuit have recognized obesity greatly increases the risk of serious COVID-19 symptoms and complications and have granted motions for compassionate release to inmates with a body mass index within the 'obese' range."); *United States v. Campanella*, No. 18cr328-12, 2020 WL 4754041, at *3 (D. Colo. Aug. 17, 2020) (granting reduction in sentence after finding that "the medical evidence is relatively clear that morbid obesity is one of the strongest risk factors for more severe illness from COVID-19"); *United States v. Hayes*, No. 17cr20292, 2020 WL 4001903, at *3 (E.D. Mich. July 15, 2020) (granting compassionate release motion after finding that "the defendant's obesity alone qualifies as a recognized risk factor"); *United States v. Mishler*, No. 19cr105-2, 2020 WL 3791590, at *2 (N.D. Cal. July 7, 2020) (granting reduction in sentence when only COVID-19 risk factor was severe obesity); *United States v. Richardson*, No. 2:17cr48, 2020 WL 3402410, at *3 (E.D. Cal. June 19, 2020) ("[T]his Court finds that hypertension or obesity alone—regardless of age—place a defendant at higher risk of COVID-19 complications.")

### B. Ms. Bozon's history of smoking renders her at increased risk of severe illness from COVID-19

Ms. Bozon reports that she began smoking in the late 1980s to calm her nerves while married to her abusive husband. Ms. Bozon smoked 10-15 cigarettes a day. She continued to smoke during her incarceration at FCI Tallahassee until the facility banned cigarettes.[14] Altogether, Ms. Bozon smoked 10-15 cigarettes every day for about 15-18 years. Additionally, Ms. Bozon has twice suffered from acute upper respiratory infections, one as recent as July 13, 2020. (Ex. 4 at 432).

The CDC's guidance advises that "being a current or former cigarette smoker increases your risk of severe illness from COVID-19."[15] Courts around the country have found extraordinary and compelling reasons warranting release where people's medical conditions included a heightened risk of severe illness because they smoke or had a history of smoking.[16] This Court should find the same.

---

[14] According to the FCI Tallahassee "Inmate Information Handbook," the facility banned smoking in 2006, https://www.bop.gov/locations/institutions/tal/TAL_aohandbook.pdf, though Ms. Bozon believes the ban began 2002.

[15] CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-withmedical-conditions.html#smoking.

[16] *See e.g.*, *United States v. Andrade*, No. CR 16-20751, 2020 WL 5505344, at *2 (E.D. Mich. Sept. 11, 2020); *United States v. Khawaja*, 2020 WL 5549123, at *2 (D.N.H. Sept. 16, 2020); *United States v. Critchlow*, 2020 WL 5544043, at *1 (S.D. Ind. Sept. 16, 2020); *United States v. Ludwig*, 2020 WL 4547347, at *2 (E.D. Cal. Aug. 6, 2020); *United States v. Galaz*, 2020 WL 4569125, at *1 (S.D. Cal. Aug. 7, 2020); *United States v. Godinez*, 2020 WL 4530743, at *1 (S.D. Cal. Aug. 6, 2020); *United States v. Mueller*, 2020 WL 3791548, at *1 (E.D. Pa. July 7, 2020); *United States v. Danson*, 2020 WL 3467887, at *2 (D.D.C. June 25, 2020); *United States v. Van Cleave*, 2020 WL 2800769 (W.D. Wash. May 29, 2020); *United States v. Rich*, 2020 WL 2949365, at *2 (D.N.H. June 3, 2020); *United States v. Smith*, 2020 WL 4345327, at *1 (W.D. Wash. July 29, 2020); *United States v. Foster*, 2020 WL 5876941, at *1 (D. Or. Oct. 2, 2020); *United States v. Terraciano*, 2020 WL 5878284, at *1 (E.D. Cal. Oct. 2, 2020).

### C. Ms. Bozon's age and ethnicity render her at increased risk of severe illness from COVID-19

Ms. Bozon is almost sixty years old and a Latina from Colombia. Unfortunately, Ms. Bozon is a member of one of the five highest-risk age categories; people aged 50-64 years have four times higher hospitalizations and 30 times higher deaths than 18-29 year olds.[17] Further, the CDC recognizes the disproportionately higher risk people of color have of severe illness, including death, upon contracting COVID-19.[18] Indeed, "Hispanic and non-Hispanic Black adults have a higher prevalence of obesity, like Ms. Bozon, and are more likely to suffer worse outcomes from COVID-19."[19]

### D. Ms. Bozon's prior and other health conditions may affect her immune system, making her at increased risk for severe illness

The CDC advises, "The more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19."[20] Ms. Bozon already suffers from obesity and a history of smoking, which place her at an increased risk for severe illness from COVID-19. Unfortunately, her idiopathic peripheral autonomic neuropathy, history of hypertension, hyperthyroidism, history of kidney stones and urinary tract infection, vitamin D deficiency, history of acute upper respiratory infections, and history of vaginal bleeding and endometrial concerns—further increases her risk of experiencing severe complications from COVID-19.

---

[17] CDC, Older Adults and COVID-19 (last updated Dec. 13, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.
[18] CDC, Health Equity Considerations and Racial and Ethnic Minority Groups, July, 24, 2020, https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html#anchor_1595551043298
[19] https://www.cdc.gov/obesity/data/obesity-and-COVID-19.html. *See also* Tiffany Ford, *Race Gaps in COVID-19 Deaths are Even Bigger than They Appear*, Brookings (June 16, 2020) https://www.brookings.edu/blog/upfront/2020/06/16/race-gaps-in-COVID-19-deaths-are-even-bigger-than-they-appear.
[20] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

Specifically, Ms. Bozon suffers from immune compromising vitamin D deficiency. COVID-related lockdowns have substantially limited her sun-exposure. Although Ms. Bozon takes supplements, she continues to have low vitamin D levels. Some studies indicate that a vitamin D deficiency is associated with risks relating to the coronavirus, although the CDC has not identified vitamin D deficiency as a condition that increases people's risk of severe illness to COVID-19.[21]

Ms. Bozon's medical records reveal that her numerous health conditions are getting worse and decreasing her ability to provide self-care. For example, Ms. Bozon has a history of kidney stones and the associated urinary tract infections. (Ex. 4 at 69; 157-61). "Having one kidney stone increases the risk of developing another one; this also increases the risk of chronic kidney disease and kidney failure."[22] Thus, her history of kidney stones, unfortunately, may exacerbate her risk of severe complications because the CDC has warned that chronic kidney disease increases the risk of severe illness from COVID-19.[23]

---

[21] Medical Life Sciences News, *More Evidence on Vitamin D Deficiency and Death Rates from COVID-19*, https://www.news-medical.net/news/20200702/More-evidence-on-vitamin-D-deficiency-and-death-rates-from-COVID-19.aspx; https://www.endocrine.org/news-and-advocacy/news-room/2020/study-finds-over-80-percent-of-covid19-patients-have-vitamin-d-deficiency (finding that over 80% of patients at a hospital in Spain had vitamin D deficiency); *UChicago Medicine Researchers Find Association Between Vitamin Deficiency, Risk of Infection*, https://news.uchicago.edu/story/vitamin-d-deficiency-may-raise-risk-getting-covid-19-study-finds; David O. Meltzer, *Association of Vitamin DX Deficiency and Treatment with COVID-19*, May 13, 2020, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7274230. ("Vitamin D deficiency that is not sufficiently treated is associated with COVID-19 risk.").
[22] https://www.geisinger.org/health-and-wellness/wellness-articles/2017/03/10/18/51/can-kidney-stones-lead-to-chronic-kidney-disease#:~:text=%E2%80%9CKidney%20stones%20are%20just%20one,can%20prevent%20chronic%20kidney%20disease.%E2%80%9D
[23] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#chronic-kidney-disease

Further, if Ms. Bozon does contract COVID-19, it is likely she will suffer additional damage to her kidneys. According to doctors at John Hopkins Medicine, doctors and researchers are learning that COVID-19 can cause severe and lasting harm to the kidneys.[24] Some people suffering severe illness from COVID-19 show signs of kidney damage – <u>even people who had no underlying kidney problems before they were infected</u>.[25] According to early reports, 30% of patients hospitalized in China and New York for COVID-19 developed moderate to severe kidney damage.[26] Doctors in New York say the number could be much higher.[27] In some cases, the kidney damage is severe enough to require dialysis.[28] This is dangerous data for Ms. Bozon. If she contracts COVID-19, she is at risk of severe illness <u>and</u> at risk of kidney damage.

### E. *Ms. Bozon is not sufficiently protected from COVID-19 at FCI Tallahassee and she is at risk of contracting the virus*

FCI Tallahassee has the highest number of COVID-19 cases of any BOP facility in the country.[29] Although "[a]nyone can get infected,"[30] the CDC admits, "People in correctional and detention facilities are at greater risk for some illnesses, such as COVID-19, because of close living arrangements with other people."[31] Repeated COVID-19 outbreaks at FCI Tallahassee proves that

---

[24] Corona Virus: Kidney Damage Caused by COVID-19, https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/coronavirus-kidney-damage-caused-by-covid19
[25] *Id*.
[26] *Id*.
[27] *Id*.
[28] *Id*.
[29] BOP, COVID-19, https://www.bop.gov/coronavirus.
[30] CDC, What You Need to Know about COVID-19 if You are Incarcerated/Detained (Nov. 10, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/community/correction-detention/Incarcerated_Detained-508.pdf; *see also* CDC, Things to Know About the COVID-19 Pandemic (Jan. 5, 2021), https://www.cdc.gov/coronavirus/2019-ncov/your-health/need-to-know.html.
[31] CDC, FAQs for Correctional and Detention Facilities (Jan. 26, 2021), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/faq.html#People.

BOP's efforts to control COVID-19's spread are not enough to guarantee even a moderate level of safety from COVID-19.[32]

Due to the prevalence of COVID-19 at FCI Tallahassee, Ms. Bozon received the first dose of the vaccine on January 21, 2021. Unfortunately, her risk for severe complications associated with COVID-19 did not disappear with the vaccine. In other words, even though Ms. Bozon received the first dose of the vaccine, she still risks contracting the virus. First, due to her obesity, the vaccine may not be effective. Second, the vaccine may not immunize against variant strains.

The CDC guidance advises, "[I]t's possible a person could be infected with the virus that causes COVID-19 just before or just after vaccination and still get sick."[33] Even BOP recognizes that the vaccine might not protect recipients; its COVID-19 Vaccine guidance warns, "All current recommendations for preventing and managing SARS-CoV-2 infection should continue to be followed. This includes use of quarantine for vaccinated persons potentially exposed to the virus."[34] COVID-19 is raging through FCI Tallahassee and Ms. Bozon is still at risk of severe illness, which includes death.

In addition, CDC warns that the variants appear more contagious than the prior strain and that researchers need more studies to determine how vaccines may respond to the variants. In fact, vaccine producers Pfizer, Moderna, Novavax, and Johnson & Johnson have all admitted that their

---

[32] Marco Cascella, *et al.*, Features, Evaluation and Treatment Coronavirus (COVID-19), National Center for Biotechnology Information ("NCBI"), Mar. 20, 2020, https://www.ncbi.nlm.nih.gov/books/NBK554776/#_ncbi_dlg_citbx_NBK554776; Jane Qiu, *Covert coronavirus infections could be seeding new outbreaks*, Nature (March 20, 2020), https://go.nature.com/3bxZeUd.

[33] CDC, Myths and Facts about COVID-19 Vaccines (Feb. 3, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/facts.html. *See also* Dr. Lauren Hana, M.D., "Keep the Masks Handy" Boca Grande Health Clinic (Jan. 15, 2021), https://www.bghc.org/news/healthcare/keep-the-masks-handy.

[34] BOP, issued Jan. 4, 2021, https://www.bop.gov/resources/pdfs/2021_COVID19_vaccine.pdf.

vaccines are less effective in their studies and clinical trials for B.1.351, which currently dominates in South Africa.[35]

Unfortunately, Florida leads the nation in the highest number of variant cases of COVID-19.[36] Further, CDC guidance warns that research shows the vaccine may not even be effective on people with obesity.[37] Therefore, due to Ms. Bozon's obesity, even if she receives both doses of the vaccine, the vaccine may not protect her from contracting COVID-19.

The number of COVID-19 cases at FCI Tallahassee remains alarming. On February 5, 2021, 50% of people incarcerated at FCI Tallahassee tested positive for COVID-19.[38] On February 12, 2021, the number of COVID-19 cases jumped to 55%.[39] Because of her health problems and age, Ms. Bozon is a higher risk of both hospitalization and death and FCI Tallahassee is not managing the virus effectively.[40] This Court should grant Ms. Bozon's compassionate release.

---

[35] Benjamin Mueller *et. al*, *South Africa Says AstraZeneca's COVID-19 Vaccine is Not Effective at Stopping Variant*, NY Times (Feb. 7, 2021), https://www.nytimes.com/2021/02/07/world/south-africa-astrazeneca-vaccine.html.

[36] CDC, US COVID-19 Cases Caused by Variants, Feb. 4, 2021, https://www.cdc.gov/coronavirus/2019-ncov/transmission/variant-cases.html.

[37] https://www.cdc.gov/obesity/data/obesity-and-COVID-19.html; *see also* Sarah Varney, America's Obesity Epidemic Threatens Effectiveness of Any COVID Vaccine, Kaiser Health News (Aug. 6, 2020), https://khn.org/news/americas-obesity-epidemic-threatens-effectiveness-of-any-COVID-vaccine.

[38] BOP tested 734 people incarcerated at FCI Tallahassee and 370 tested positive for COVID-19. https://www.bop.gov/coronavirus (accessed Feb. 7, 2021).

[39] BOP tested 749 people incarcerated at FCI Tallahassee and 409 tested positive for COVID-19, with one person awaiting results. https://www.bop.gov/coronavirus (accessed Feb. 14, 2021).

[40] BOP's data provides incomplete information regarding COVID-19 cases at FCI Tallahassee. While the CDC warns that people with certain illnesses have an increased rate of hospitalizations and death, BOP's numbers only include number of people who have died of the disease. Therefore, the data indicates the number of people at FCI Tallahassee who have not died because of COVID-19, but not how many people have suffered severe illness.

### V. Ms. Bozon is not a danger and the § 3553(a) factors and § 1B1.13(2) guidance[41] support the grant of her motion for compassionate release

Analysis of the § 3553(a) factors and § 1B1.13(2) guidance warrant reduction of Ms. Bozon's life sentence to time served[42] and immediate release. As discussed, Paul E. Pelletier and

---

[41] Although Ms. Bozon meets the medical conditions for extraordinary and compelling under 18 U.S.C. § 3582(c)(1) and the sentencing factors set forth in 18 U.S.C. § 3553(a), several circuits have held that district courts have discretion to determine what qualifies as an extraordinary and compelling circumstance. The Second, Fourth, Sixth, and Seventh Circuits have agreed that § 1B1.12 and its application notes do not apply to the "extraordinary and compelling reasons" determination under § 3582(c)(1)(A). *See United States v. Brooker*, 976 F.3d 228, 235-36 (2nd Cir. 2020) (holding that § 1B1.12 applies only when BOP files a motion for compassionate release, not when a defendant seeks release through the First Step Act); *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020) (agreeing with *Brooker*); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (agreeing with *Brooker*); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) (agreeing with *Brooker*).

[42] Courts around the country have reduced life sentences and released defendants because of the heightened risk of COVID-19 in prisons and health concerns. *See United States v. Jaen*, 91-cr-814, ECF No. 505 (S.D. Fla. July 6, 2020) (reducing life sentence to time served for 81-year old convicted of 600-lb cocaine distribution and assault on federal officer); *United States v. Rice*, Case No. 1:03-cr-441 (D.D.C. July 8, 2020) (reducing life sentence to approximately 16.5 years); *United States v. Jenkins*, No. 4:93-cr-11 (W.D. Mich. June 12, 2020) (reducing life sentence based on age and multiple health conditions); *United States v. Naranjo*, No. 93-cr-418 (D.D.C. May 11, 2020) (granting compassionate release reducing life sentence to time served due to age and health conditions placing him at risk for COVID); *United States v. Smith*, 6:04-cr-2002 (N.D. Iowa July 10, 2020) (reducing mandatory life sentence to time served based on health conditions and COVID after serving approximately 16 years of sentence); *United States v. Rodriguez-Barron*, Case No. 2:94-cr-00559-GW (C.D. Cal. Jul. 9, 2020) (reducing then mandatory life sentence based on health conditions and COVID); *United States v. Barron*, 2:94-559-GW, DE 424 (C.D. Cal. Jul. 10, 2020) (reducing life sentence based on age and health conditions); *United States v. Parker*, Case No. 2:98-cr-00749-CAS-1, 2020 WL 2572525, at *14 (C.D. Cal. May 21, 2020) (reducing life sentence to approximately 22 years, time served for 65-year-old defendant experiencing deteriorating health and particularly susceptible to COVID-19 due to several conditions resulting from the aging process); *United States v. Barrenechea*, Case No. 92-cr-00403-MMC-3, 2020 WL 2315638, at *1 (N.D. Cal. May 7, 2020) (granting compassionate release and reducing life sentence to 332 months time served for defendant with increased risk of illness from COVID-19); *United States v. Williams*, No. 3:04-cr-00095-MCR-CJK, ECF No. 91 (N.D. Fla. Apr. 1, 2020) (granting compassionate release of defendant who served 15 years of life sentence to aging prisoner with medical issues making him vulnerable to COVID-19); *United States v. Smith*, 2020 WL 2844222 (N.D. Iowa June 1, 2020) (reducing life sentence based on lung cancer and other medical conditions); *United States v. Kubinski*, No. 3:93-cr-28 (EDNC May 13, 2020) (reducing life sentence based on age and deterioration in physical health); *United States v. Perez*, No. 6:88-cr-10094 (D. Kan. March 11, 2020) (reducing life sentence based on age and rehabilitation); *United States v. Curtis*, No. 03-cr-533, 2020 WL

Jacqueline M. Arango, the two former Assistant United States Attorneys for the Southern District of Florida who prosecuted the case against Ms. Bozon, now advocate for her release.[43] (Ex. 1; Ex. 2; Ex. 6 at 7). Mr. Pelletier, Ms. Arango, and Mr. Roche submitted a joint letter to the White House Counsel requesting Ms. Bozon's release on October 27, 2020. In their joint letter supporting Ms. Bozon's federal clemency, the former law enforcement officials proclaimed, "In our opinion, continued incarceration would serve no beneficial purpose and, after 25 years it can be [sic] fairly be said that Ms. Bozon Pappa has, in fact, paid her debt to society." *Id.*

Rarely do the prosecutors and special agent who sought a person's arrest now seek her release. In fact, in his February 16, 2021 letter to the Court supporting Ms. Bozon's release, Mr. Pelletier declared:

> [A]s an Assistant United States Attorney in Miami for more than a dozen years, I sentenced countless individuals for a vast array of federal crimes. I have not supported the compassionate release of any person other that Ms. Bozon Pappa since I retired from the Department of Justice in 2011.

(Ex. 1). Ms. Bozon's extraordinary character; dedication to being a positive member of society, even while incarcerated; and her health motivated their letter of support.

---

1935543 (D.D.C. Apr. 22, 2020) (granting compassionate release to a 43-year-old defendant who had served 17 years of life sentence for sex trafficking children based on his advanced MS, COVID-19, and changes to the career offender guideline); *United States v. Plunk*, No. 94-cr-36-TMB (D. Alaska Apr. 9, 2020) (granting compassionate release to prisoner serving two life sentences for drug offenses based on medical conditions and vulnerability to the COVID-19 pandemic due to age); *United States v. Regas*, No. 391CR00057MMDNA1, 2020 WL 2926457, at *4 (D. Nev. June 3, 2020) (reducing life sentence due to age and vulnerability to COVID-19); *United States v. Ledezma-Rodriguez*, No. 3:00-cr-71 (S.D. Iowa July 14, 2020) (mandatory life from two 851s would no longer apply and finding sentencing disparity combined with rehabilitation, COVID-19, and a dependent family member justified release).

[43] Mr. Pelletier and Ms. Arango served on the South Florida Joint DEA-Customs Task Group with Mr. Roche. The Task Group was under the South Florida Task Force that President Ronald Reagan created, and Vice President George H. W. Bush chaired. It sought collaboration between federal, state, and local law enforcement to address criminal law concerns in South Florida. https://www.reaganlibrary.gov/public/digitallibrary/smof/counsellor/meese/oa11841/40-373-7789427-OA11841-001-2019.pdf

The Court should find that Ms. Bozon's "educational and rehabilitative accomplishments are unique and distinctively important because [s]he engaged in all such positive activities without any tangible incentive other than self-improvement, given . . . [her] life sentence." *United States v. Millan*, 2020 WL 1674058, *9 (S.D.N.Y. Apr. 6, 2020) (granting compassionate release to a "leader of a large-scale narcotics distribution organization" with a first-time nonviolent conviction and who had served 28 years of a life sentence after a jury trial.) Through her focus on betterment while in prison, Ms. Bozon proves there is no risk of recidivism.

Ms. Bozon's history while incarcerated has been immensely impressive and positive. Her 2018 Clemency Petition and 2020 Supplemental Clemency Petition include letters of support from well-respected BOP employees who supervised and interacted with Ms. Bozon, as well as other supportive individuals. (Ex. 5; Ex. 6). Ms. Bozon's recommenders include:

- Paul E. Pelletier, former Assistant U.S. Attorney; Jacqueline M. Arango, former Assistant U.S. Attorney; Tobias Roche, former ICE agent
- Paul E. Pelletier, former Assistant U.S. Attorney (individually)
- Arthur T. Becton, Jr. Retired Federal Bureau of Prisons Supervisory Chaplain
- Sleepy Bear M. Overmyer, Military Veteran and 25-year Federal Law Enforcement Officer
- Ron Horton, BOP Unit Manager
- LaFaye Henry, BOP Drug Treatment Specialist
- Mrs. Green, BOP RDAP Drug Abuse Treatment Specialist
- Father Dai Mai, Catholic Priest and BOP Supervisory Chaplain
- Peter Dahlstrom, BOP Staff Chaplain
- Sheritha Pearson, BOP Religious Service Assistant
- Damaris Ramos, formerly incarcerated with and mentored by Ms. Bozon
- Ms. Bozon's four children: Itala Jhoana Romero Bozon, Catalina Pilar Romero Bozon, Gean Carlos Romero Bozon, and Martha Patricia Romero Bozon

Ms. Bozon has worked at the prison facility and engaged in educational and vocational training as well. (Ex. 5 at 19-37; Ex. 6 at 9-11). She has taken classes to better herself, including obtaining her GED, nursery apprentice, and horticultural and landscaping course. (Ex. 6 at 9-11). Through her 18-credit-hours Women's Empowerment course, she gained self-value and

appreciation of her own learning abilities. *Id*. at 9. When Ms. Bozon lived with her former husband, he was very physically and emotionally abusive and controlling. PSI ¶ 63. She reports that her ex-husband would never have let her engage in such positive and enriching opportunities.

In addition to increased educational opportunities, Ms. Bozon, has held a full-time job at FCI Tallahassee for years, including working in the chapel, as a maintenance orderly, and in greenhouse construction. As the chaplain's clerk, Ms. Bozon "[taught] in the Chapel (Values and New Believers). She participate[d] in various chapel activities and supervise[d] other instructors. She also [taught] the Spanish classes in chapel." *Id*. at 17.

Through that role, Ms. Bozon learned about the diverse religions people at FCI Tallahassee follow. As the maintenance orderly, she learned about how to use various chemical cleaning solutions safely. In the greenhouse position, Ms. Bozon learned how to maintain different plants during the seasons.

Ms. Bozon obtained her current position as an orderly in the UNICOR call center in 2012 and has worked 5-7 days a week from 7:30 am – 4:15 pm. She is the head of maintenance. Ms. Bozon reports that she is constantly working to disinfect the surfaces, doorknobs, offices, and cubicles to protect against COVID-19. She also supervises one other orderly whom she trained and to whom she delegates assignments.

Father Dai Mai, the Acting Supervisory Chaplain praised Ms. Bozon, noting, "Bozon Pappa is a hard and honest worker. . . . She receives excellent work reports. She serves as a suicide companion, a position of trust where she monitors inmates who were placed on suicide watch." *Id*. at 25. For 22 years, Ms. Bozon had been a member of the Honor Unit at FCI Tallahassee, which is reserved for women with little to no disciplinary reports. *Id*. Unfortunately, because of COVID-

19, she is no longer in that unit; BOP converted the unit into a quarantine unit for individuals exposed to COVID-19.

Ms. Bozon has served as a model for other women incarcerated at FCI Tallahassee. She has mentored women at the facility who have then been released and reentered society successfully. Ms. Bozon feels a sense of satisfaction knowing that she helped these women get on the right track.

Ms. Bozon's 26 years of incarceration for her involvement in the drug conspiracy "reflect the seriousness of the offense, . . . promote respect for the law, and . . . provide just punishment for the offense" under § 3353(a)(2)(A). She is 59 years old and "'age is generally a strong factor influencing the likelihood of committing a crime,' with 'older offenders . . . substantially less likely than younger offenders to recidivate following release.'" *United States v. Dominguez,* Case No. 93-401-CR-Graham, 8 (S.D. Fla. September 22, 2020) (citing U.S. Sentencing Comm'n, The Effects of Aging on Recidivism Among Federal Offenders, 11, 30 (Dec. 2017), https://www.ussc.gov/research/research-reports/effects-aging-recidivismamong-federal-offenders). Ms. Bozon is not a danger to the safety of another person or a danger to the community, if § 1B1.13(2) applies.

Although allegations of Ms. Bozon kidnapping a minor child in 1993 resulted in an upward departure in Ms. Bozon's 1997 sentencing, Lesley Castro—the minor child, now an adult— and her father Luis R. Castro recanted that allegation. Ms. Castro declared in a sworn statement, "I was never kidnapped or taken against my will." (Ex. 8 at 2: Letters from Tobias Roche, Lesley Castro, and Luis Castro). Mr. Castro provided additional context in retracting the kidnapping allegation; he wrote, "She was initially reported as a missing person. My daughter returned 2 days later accompanied by my cousin (Evelyn Bozon Pappa) and her children. Leslie was unharmed and in

good spirits. Based on the facts, she (Leslie) had not been kidnapped or held against her will, the police did not take any further action." *Id*. at 3.

Further, Mr. Roche, an agent who conducted the narcotics investigation against Ms. Bozon, confirmed the facts in these affidavits, stating "Ms. Bozon explained that she had taken the group of children to Disneyworld, Florida; about 3.5 hours away. The local police seemed satisfied, and no further law enforcement action was taken on this incident, due to no apparent malicious intent by Ms. Bozon Pappa." *Id*. at 1. This past kidnapping allegation should not affect Ms. Bozon's sentence reduction.

Ms. Bozon is the only person associated with the drug conspiracy still incarcerated; her former husband lived as a fugitive before being killed in Colombia years ago. Ms. Bozon was not sentenced for any crimes of violence, and she has accepted responsibility for her offenses. (Ex. 5 at 46-47). Ms. Bozon's conviction is her only contact with the criminal legal system. At 59 years old, Ms. Bozon is focused on rehabilitation, reuniting with her family, and guiding others who need support.

## VI. Ms. Bozon's release plan includes a prompt removal to Colombia and living with her supportive her family

Once Ms. Bozon's term expires, she will voluntarily leave the United States. Ms. Bozon seeks to return to Colombia and has a place to live with her eldest daughter, Itala Romero Bozon. The ICE ERO's Miami Field Office has agreed to expedite her removal to Colombia.[44] (Ex. 3). It

---

[44] Courts have reduced defendants' sentences and ordered them released, even when they have ICE immigration detainers. *See United States v. Arenales-Monroy,* Case No. 16-CR-20374, DE No. 42 at *1 (S.D. Fla. June 15, 2020) (wherein the government conceded release of an undocumented defendant "so that a pending detainer may be executed by" ICE); *see also United States v. Vasquez-Lujano,* Case No. 95-cr-45-BLW (D. Idaho Oct. 30, 2020) (granting compassionate release to person sentenced to life imprisonment with ICE detainer suffering with atrial fibrillation, Hepatitis C, hypertension, and peripheral vascular disease); *United States v. Hector Lopez*, 2020 WL 6298061 (D. Haw. Oct. 27, 2020) (granting compassionate release to person with ICE detainer, life sentence, and not severe health conditions because of

will issue a final removal order that would require Ms. Bozon to report to the ICE ERO Jacksonville Field Office with her flight travel documents, depart the country, and then report to the United States consulate in Colombia upon her arrival there.

While COVID-19 had spread worldwide, notably, according to the CDC's COVID-19 Data Tracker, Colombia's rate of COVID-19 cases is half that of the United States.[45] As of February 4, 2021, Colombia has reported 145.5 per 100,000 people, while the United States' rate is at 290.6 cases. Unfortunately, the United States also has a higher rate of death; approximately 6.5 people per 100,000 have died in the United States compared to 4.9 deaths in Colombia.[46]

Ms. Bozon's 97-year-old mother as well as her four children and seven grandchildren live in Colombia. Her eldest daughter, Itala Jhoana Romero Bozon, is married with three kids. She has a degree in medicine and serves as a general surgeon. Her daughter would be able to help Ms. Bozon follow safety measures to reduce her risk of contracting COVID-19 and ensure Ms. Bozon receives medical care while living in Colombia.

---

"extraordinary rehabilitation," "youth at time of the offense" and the "ongoing COVID-19 pandemic."); *United States v. Antonio Garduno Valdovinos*, Case No. 18-cr-3496-WQH (S.D. Cal. Oct. 13, 2020) (Defendant with ICE detainer and suffering with serious medical conditions granted compassionate release where the sentence already served "reflects the need 'to protect the public from further crimes of the defendant' and 'to reflect the seriousness of the offense' under 18 U.S.C. §3353(a) under the circumstances of this case."); *United States v. Villalobos-Gonzalez*, 2020 WL 4569697, at *1, n. 2 (W.D. Wash. Aug. 7, 2020) ("Defendant notes that several courts have found that a defendant who is subject to a valid immigration detainer may still be granted compassionate release. (See DE 360 at 2–4) (collecting cases). Accordingly, the Court addresses Defendant's request for compassionate release without regard to the possibility that he will be detained by U.S. Immigration and Customs Enforcement upon release."); *United States v. Gonzalez*, Case No. 5:10-CR-172-BO, DE 156 (E.D. NC. April 13, 2020) (releasing undocumented defendant convicted of an aggravated felony, with an ICE detainer, in light of compelling factors including his age at 62 years, serious heart condition, and service of a significant portion of the sentence).

[45] CDC, COVID Data Tracker (accessed Feb. 4, 2021), https://COVID.cdc.gov/COVID-data-tracker/#global-counts-rates.

[46] *Id*.

In addition, Gean Carlos Romero Bozon, Ms. Bozon's second born, is married with one child, and is an architect. Catalina Pilar Romero Bozon, her third child, has two children, obtained a degree in fashion design, and works as a clothing designer. Lastly, Martha Patricia Romero Bozon, her youngest child and fourth born, has one child, and works as a logistics coordinator. Ms. Bozon's children have pledged to continue to support her upon her return to Colombia. Ms. Bozon will be safer in Colombia with her children than at FCI Tallahassee.

Pursuant to Local Rules, undersigned counsel conferred with Assistant United States Attorney Frank Tamen. Mr. Tamen was unable to provide a position at the time of filing.

WHEREFORE, under these extraordinary circumstances, Evelyn Cecilia Bozon Pappa respectfully requests that the Court grant her request for compassionate release, reducing her life sentence to time served.

Respectfully submitted,

*/s/ Carla Laroche*
Florida Bar No.:121873
Public Interest Law Center, FSU College of Law
425 West Jefferson Street
Tallahassee, FL  32306-1601
Tel: 850-644-2722
Email: claroche@law.fsu.edu

## CERTIFICATE OF SERVICE

I HEREBY certify that on February 16, 2021, undersigned counsel electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Carla Laroche*
Carla Laroche