UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 95-00084-CR-LENARD

UNITED STATES OF AMERICA

vs.

EVELYN CECILIA BOZON PAPPA,

     **Defendant.**

_____/

## GOVERNMENT'S RESPONSE TO DEFENDANT
## BOZON PAPA'S MOTION FOR COMPASSIONATE RELEASE

Defendant Evelyn Bozon Papa has filed a motion pursuant to the "Compassionate Release" provisions of 18 U.S.C. §3572(c)(1)(A), seeking a reduction of her life sentence to time served (approximately 26 years), which will result in her prompt return to Colombia. As grounds for relief, she relies on pre-existing health conditions that would place her at high risk if she were to become infected with COVID-19.

### Legal Standards

The statute governing compassionate release, 18 U.S.C. §3582(c)(1)(A), clearly specifies that a sentence, once imposed, may only be subsequently modified under certain specified circumstances. To begin with, as relevant to the instant motion for compassionate release, a defendant must first petition the Bureau of Prisons (BOP) to file a motion on her behalf, and it must be declined by the BOP before she can file on her own. As shown by the letter from the Warden of her prison, the defendant has met this requirement.

Substantively, the statute requires a finding by the court that there are "extraordinary and compelling circumstances" that warrant such a reduction, and providing that any such sentence reduction must be consistent with applicable policy statements of the Sentencing Commission.

Those policy statements are contained in U.S.S.G. §2B1.13 and its Commentary. In defining "Extraordinary and Compelling Reasons," the Application Notes to the guideline address terminal medical conditions and serious physical, medical, or functional conditions that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." In other words, mere ill health and the possibility that an infection, if contracted, could have more severe results than are typical are not extraordinary or compelling.

The defendant has not met the requirement of showing such circumstances. Some of the pre-existing conditions that she identifies as creating her above-average risk have been acknowledged by the United States as providing grounds for compassionate release: specifically, obesity, which in her case is quite serious, and hypertension. Under conditions of the current pandemic, a defendant suffering from such ailments *may* be deemed to have extraordinary and compelling reasons for release. This determination, which was made by the Attorney General in 2020, was based on the facts that preventive measures against infection, including maintaining social distancing, mask-wearing, and careful sanitation were difficult in most prison environments, and that those pre-existing medical conditions could seriously elevate the risk of severe or fatal effects from a COVID-19 infection.

In addition to those two specific risk factors, the defendant also lists a panoply of other health conditions that, to generalize her claims, in some studies have been shown in some cases to possibly increase some of the risks if a person becomes infected with COVID. Some of those factors are not even relevant by now – for example, she used to be a light smoker (½ pack a day), but she had to quit fourteen years ago, when her prison banned smoking.

Her arguments about the elevated risks she faces based on these other factors would be speculative at most. However, the defendant's entire argument about risk from COVID evaporates

in light of the fact that she has been vaccinated against it.  In response to this obvious issue, she can only argue that the vaccine "may not be effective" due to her obesity, and it "may not immunize against variant strains."

The defendant's concerns are understandable but not well-founded.  In a January 8, 2021 report, the Chief Scientist for the World Health Organization, Dr. Soumya Swaninathan, was questioned about the United Kingdom and South African COVID variants, and noted that "at this point in time, most scientists believe that the vaccines that are currently in development and a couple that have been approved should provide protection against this variant and other variants because these vaccines elicit a fairly broad immune response, a host of antibodies and cell-mediated immune responses." (*www.who.int/emergencies/diseases/novel coronaviruses*).

The Wall Street Journal (*wsj.com*) reported on February 26, 2021, that "Pfizer and Moderna have conducted lab tests of their vaccines against several versions of the coronavirus and found that the vaccines were effective against all, according to the drug makers."  The article noted that the U.S. Centers for Disease Control concurs that mutations in the COVID virus will not significantly reduce vaccine effectiveness: "Based on studies with other viruses containing similar mutations, CDC believes there will be little or no impact on immunity from natural infection or vaccination."

Dr. Cato Varney, a doctor at the University of Virginia who specializes in obesity medicine, wrote an article for *TheConversation.com* on February 8, 2021, on the question of whether the COVID-19 vaccine would work well in patients with obesity.  While explaining that there were reasons for concern about this issue, she concluded:  "In short, the data released from Pfizer and the FDA show the vaccine is not only effective in participants as a whole, but in particular, patients with obesity."

3

In other words, the defendant has not shown that there are "extraordinary and compelling reasons" for her release. The defendant brought her pre-existing medical conditions to the attention of the Warden of her prison in requesting that he file a motion for compassionate release on her behalf. The Warden's response is included in the attachments to the defendant's motion. He responded that "although you have a chronic medical condition, you are able to independently attend to your daily living activities." He thus concluded that "you have not demonstrated your request meets the minimum eligibility requirement for Compassionate Release/Reduction in Sentence."

The Government's position is that the Warden was correct; the defendant simply has not shown any extraordinary or compelling reasons why her sentence should be reduced, as those reasons are defined by the applicable statutes and sentencing guidelines.

Equitable Considerations

Should the court nonetheless find that the defendant has shown extraordinary and compelling reasons for release, it must then determine two additional factors in her favor before it can reduce her sentence. First is that she "is not a danger to the safety of any other person or to the community" (U.S.S.G. §1B1.13(2)), and second, that a reduction in her sentence would be consistent with the sentencing factors in 18 U.S.C. §3553 (18 U.S.C. §3582(c)(1)(A)).

Undersigned government counsel has reviewed the case in general, has reviewed the defendant's Pre-Sentence Investigation Report, and has also conferred with former Assistant U.S. Attorney Paul Pelletier, who originally prosecuted the case for the United States. The position of the United States is that the defendant does not now pose any danger to others, and that a sentence reduction to time served would be consistent with the sentencing factors in 18 U.S.C. §3553.

4

The defendant's organization is not specifically alleged to have been involved in violence; any danger it posed would have been through the inherent dangers of dealing in cocaine and the damage it does to society. Her former husband, who was co-leader of the organization, was apparently violent toward the defendant, but there is no indication in the records available now that he was violent to others. In any event, he has been dead for a number of years, and the organization was dismantled long ago through prosecutions by the United States. There is thus no reason to believe that the defendant now poses any danger to others or to the community. The defendant's commendable record of rehabilitation in the Bureau of Prisons reinforces this perception.

The defendant was co-leader of a significant cocaine trafficking ring that regularly smuggled cocaine into the United States through airports over a period of time. The government notes, however, that she was not a "drug kingpin" or head of a major, vertically-integrated drug trafficking organization such as have sometimes been prosecuted in this District, led by defendants such as defendants Gilberto Rodriguez-Orjuela, Bernal Madrigal, and Hernan Prada. Such drug kingpins dealt in airplane- and freighter-loads of cocaine, smuggling tens of thousands of kilograms into the United States over years of massive trafficking. This defendant's activities, although not quantified in total, were not nearly of that scale.

Another factor has been recently learned that modifies the Government's view of the defendant's culpability (although it does not affect her Guideline level). The defendant was involved in the purported kidnapping of a 12 year old girl in the aftermath of the initial law enforcement actions against her organization. However, according to Mr. Pelletier, the girl was the defendant's niece. Although her father (who was involved in the defendant's drug trafficking) did not know where she was for four days, the girl herself believed she was on a vacation trip with

her aunt and had no concerns about being with the defendant. Had the girl herself suffered the fear and anxiety that undoubtedly affected her father, the Government's view would be more punitive.

Because of the scope of the defendant's criminal activity, including how it compares to even more serious offenders who have received sentences of less than life imprisonment, the United States believes that the defendant's 26 years of imprisonment fully meets the criteria of 18 U.S.C. §3553.

## Conclusion

The defendant does not meet the legal criteria for compassionate release that are described in the statute and the sentencing guidelines. However, should the court conclude that she does meet those criteria, the equitable considerations would support the sentence reduction she seeks.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By:   /s/ Frank H. Tamen
Frank H. Tamen
Assistant United States Attorney
Florida Bar No. 0261289
99 NE 4th Street
Miami, FL 33132
(305) 961-9022 Office
(305) 536-7213 Facsimile
Frank.Tamen@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 4, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ Frank H. Tamen
Frank H. Tamen
Assistant United States Attorney