UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 95-00084-CR-JAL

UNITED STATES OF AMERICA,

    Plaintiff,

v.

EVELYN CECILIA BOZON PAPPA,

    Defendant.

_____/

**EVELYN BOZON PAPPA'S REPLY IN SUPPORT OF COMPASSIONATE RELEASE**

The Government agrees that Ms. Bozon's "26 years of imprisonment fully meets the criteria of 18 U.S.C. § 3553" and that "equitable considerations would support the sentence reduction that she seeks." DE 471 at 6. The Government agrees that Ms. Bozon suffers from "obesity, which in her case is quite serious, and hypertension" and that she is a former smoker. *Id*. at 2. The Government concedes that Ms. Bozon has met the statutory exhaustion requirement. *Id*. at 1. It opposes Ms. Bozon's release *only* because she has received the COVID-19 vaccine. *Id.* at 3. The Government's misplaced and incomplete argument about the vaccine does not justify denying Ms. Bozon compassionate release. This Court should grant Ms. Bozon's motion.

**I.**    **<u>Vaccination does not end Ms. Bozon's risk of severe illness from COVID-19.</u>**

Ms. Bozon is a 59-year-old Latina former smoker who suffers from obesity and hypertension. Unquestionably, she has a grave risk of severe illness should she contract COVID-19.[1] Notwithstanding her documented risk for severe illness, the Government claims that risk "evaporates in light of the fact that she has been vaccinated against it." *Id*. at 2-3. Not so.

---

[1] Ms. Bozon's combination of serious health problems includes obesity, history of smoking, hypertension, hyperthyroidism, idiopathic peripheral autonomic neuropathy, history of kidney

To support its theory, the Government cites three sources.[2] For each source, the Government leaves out crucial information that reveals vaccine limitations, especially for individuals with obesity. Indeed, the sources, along with the WHO and the CDC, state plainly that vaccination does not eliminate the risks COVID-19 poses. *See also* Ex. 1 (Dr. William Weber Declaration dated Mar. 11, 2021). This is especially true for Ms. Bozon because she is obese and because while incarcerated she is more vulnerable to the new COVID-19 variants.

As one district court held, "Risk appears to remain, but it is reduced to an unknown degree. The Court's conclusion is that vaccination during the pendency of the Motion for Compassionate Release …should not, and does not, in some way trump the Court's consideration of the motion." *United States v. Manglona*, Case No. CR14-5393RJB, DE 205 at 3 (W.D. Wash. Mar. 3, 2021). That district court then granted compassionate release to a person who had been vaccinated. This Court should do the same.

The Moderna vaccine is not 100% effective. Ms. Bozon's risk of severe illness still exists and meets the extraordinary and compelling basis to release her. The Government ignored the

---

stones and urinary tract infection, vitamin D deficiency, history of acute upper respiratory infections, and history of vaginal bleeding and endometrial concerns. (DE 468 at 1; DE 468-4).
[2] Science in 5, Episode #20-COVID-19- Variants & Vaccines, *World Health Organization (WHO)* (Jan. 8, 2021), https://www.who.int/emergencies/diseases/novel-coronavirus-2019/media-resources/science-in-5/episode-20---covid-19---variants-vaccines (interviewing WHO's Chief Scientist in a five-minute social media series on the more infectious COVID-19 variants, vaccines, and engaging in practices like social distancing to reduce transmission); Daniel Hernandez and Sarah Toy, New COVID-19 Strains: What Scientists Know About Coronavirus Variants, *Wall Street Journal* (Feb. 26, 2021), https://www.wsj.com/articles/new-covid-19-strains-what-scientists-know-about-coronavirus-variants-11609466017 (explaining scientists' concerns about the more transmittible and deadly COVID-19 variants); Cate Varney, Will the COVID-19 Vaccine Work as Well in Patients with Obesity?, *The Conversation* (Feb. 8, 2021), https://theconversation.com/will-the-covid-19-vaccine-work-as-well-in-patients-with-obesity-152782 (describing Pfizer vaccine trials and the benefits of regular exercise and prebiotics and probiotics foods in increasing vaccine effectiveness, which are not available to people on lockdown in BOP facilities).

CDC's express concern for the vaccine's reduced effectiveness for people with obesity, like Ms. Bozon, and how her race/ethnicity compounds the risk of severe illness.[3] In fact, each source in the Government's Response confirms experts' elevated concerns about the vaccine's long-term effects, its effectiveness against variants, and its decreased effect on people with obesity.[4]

The Government's first source is an article about Pfizer vaccine lab test results. The Government attempts to use the article as proof that COVID-19 is not an issue for people with obesity.[5] However, Ms. Bozon received the Moderna vaccine, not Pfizer. DE 468-4 at 440. The article does not mention the Moderna vaccine.

Yet, even regarding the Pfizer vaccine, the article noted, "More data is needed before we know precisely how patients with excess weight and obesity respond to vaccines when compared to the rest of the population. …Even just one year from now, we will look back and be amazed at all we have learned about COVID-19."[6] Scientists will evaluate whether the vaccine was effective on people with obesity by how many people die or become severely ill from COVID-19 after obtaining the vaccine. The Government invites the Court to take a chance on Ms. Bozon's life

---

[3] https://www.cdc.gov/obesity/data/obesity-and-covid-19.html.
[4] See https://www.nytimes.com/live/2021/03/09/world/covid-19-coronavirus/in-canada-residents-of-once-ravaged-nursing-homes-are-vaccinated-but-still-isolated (explaining the many reasons why Canadian nursing homes refuse to loosen COVID-19 restrictions even though the residents received vaccines, including the variants, unknowns about the vaccine, and citing a Canadian study of nursing home residents and their families that "found that a majority reported a marked decline in cognitive function and emotional well-being, and almost half reported that their physical functioning had worsened").
[5] See DE 471 at 3 (citing Varney, https://theconversation.com/will-the-covid-19-vaccine-work-as-well-in-patients-with-obesity-152782). Dr. Varney also wrote a piece sounding the alarm about all the ways people with obesity are at higher risk of severe illness with COVID-19. https://theconversation.com/covid-19-reveals-how-obesity-harms-the-body-in-real-time-not-just-over-a-lifetime-147810.
[6] https://theconversation.com/will-the-covid-19-vaccine-work-as-well-in-patients-with-obesity-152782.

based on information that may not be known until next year, at the earliest. This Court should decline the invitation.

Even when a healthy person is vaccinated, the purported protection is not permanent. The WHO warns, "Because COVID vaccines have only been developed in the past months, it's too early to know the duration of protection of COVID-19 vaccines. Research is ongoing to answer this question."[7] The CDC also unequivocally admits, "We don't know how long protection lasts for those who are vaccinated."[8] As new research develops, the need for boosters and additional vaccines may become necessary. This defeats the Government's claim that Ms. Bozon's vaccination ends her high risk of severe illness due to COVID-19.

Additionally, scientists recently identified a newly-sequenced variant originating in Oregon[9] that has a similar makeup as the variant found in Britain; "both more contagious, and more deadly, than the original version."[10] This Oregon variant, however, has an additional troubling mutation similar to those found in South Africa, Brazil, and New York City.[11] Because the variant found in South Africa reduces people's immune response and reduces the vaccine's effectiveness, Moderna has "begun testing new versions of their vaccine."[12] That vaccine manufacturers need to create boosters and new vaccines to combat the deadly variants proves that Ms. Bozon's high risk of severe illness or death remains real, not speculative.

---

[7] https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/coronavirus-disease-(covid-19)-vaccines.
[8] https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html (Updated Feb. 25, 2021).
[9] https://outbreak.info/situation-reports?country=United%20Kingdom&country=United%20States&division=California&pango=B.1.1.7&muts=S%3AE484K&selected=United%20States&selectedType=country.
[10] https://www.nytimes.com/2021/03/05/health/virus-oregon-variant.html (Mar. 5, 2021).
[11] *Id*.
[12] *Id*.

Although the BOP has not publicized whether it has traced variants in its facilities, other prison facilities in the United States have admitted to identifying the harsher, more contagious British variant in Michigan[13] and Maryland.[14] To make matters worse, a Colorado prison revealed on March 7, 2021, that it identified the even more dangerous variant from South Africa in its facility.[15] Florida has the most variants of any state.[16] Undoubtedly, Ms. Bozon is at risk of severe illness, including death, from these variants at FCI Tallahassee.

The Government's second source, which it uses to argue that the COVID-19 variants are not a problem, is a *Wall Street Journal* article. DE 471 at 3. However, the Government omitted that the reporter warned about the increased mortality of the British variant.[17] Further, the article was based on tests conducted in a lab. Lab tests, do not, in any way, reflect conditions in a prison that has had one of the highest COVID-19 rates in the nation. Lab tests do not disprove Ms. Bozon's valid risk for severe illness from COVID-19 in prison.

Further, WHO Chief Scientist Dr. Soumya Swaninathan, who the Government referred to in its third and final source, DE 471 at 3, states that all people, vaccinated or not, should practice social distancing, quarantining, wearing a mask, and avoiding crowded and closed spaces.[18] "All

---

[13] https://www.usatoday.com/story/news/nation/2021/02/17/uk-variant-covid-michigan-prison-bellamy-creek/6779162002/.
[14] https://www.baltimoresun.com/coronavirus/bs-md-coronavirus-prisons-maryland-united-kingdom-20210222-dkxkwm3kdbbbxf2gfocv5jij5q-story.html.
[15] https://www.canoncitydailyrecord.com/2021/03/07/colorado-south-african-covid-variant/.
[16] CDC, US COVID-19 Cases Caused by Variants (Updated Mar. 7, 2021), https://www.cdc.gov/coronavirus/2019-ncov/transmission/variant-cases.html.
[17] https://www.wsj.com/articles/new-covid-19-strains-what-scientists-know-about-coronavirus-variants-11609466017.
[18] https://www.who.int/emergencies/diseases/novel-coronavirus-2019/media-resources/science-in-5/episode-20---covid-19---variants-vaccines. *See also* Declaration of Dr. Marc Stern, *Manglona*, No. CR14-5393RJB, DE 204-1 (Feb. 25, 2021) (warning that "continued incarceration exposes [a vaccinated person] to a higher risk of infection and its complications than being in the community").

of these things together definitely make a difference in bringing down transmission," Dr. Swaninathan stated. *Id.*

While incarcerated, Ms. Bozon cannot take these precautions to keep herself safe, which the Government admitted to in its Response. DE 471 at 2. The Government confessed that the Attorney General conceded that "preventive measures against infection, including maintaining social distancing, mask-wearing, and careful sanitation were difficult in most prison environments." *Id.*[19]

Even after conceding she had extraordinary and compelling health conditions, the Government wants the Court to force Ms. Bozon to languish in a prison that had the highest rate of COVID-19 cases in the nation for weeks. This Court should reject the Government's arguments and should "not allow [Ms. Bozon] to be endangered for one more day. Every day – indeed, every minute – may count, particularly for someone like [Ms. Bozon] who is at a high-risk from COVID-19 and currently lives in a facility with a documented outbreak and limited means of protection." *United States v. Park*, 456 F. Supp. 3d 557, 563 (S.D.N.Y. 2020). The Court should find extraordinary and compelling reasons to reduce Ms. Bozon's sentence, despite access to the Moderna vaccine that only confers imperfect, reduced protection.

II. **A history of smoking is a history of smoking.**

The Government admits that Ms. Bozon is a former smoker. DE 471 at 2. It ignores the CDC's declaration that "[b]eing a current or former cigarette smoker increases your risk of severe

---

[19] Courts have well established that "detention conditions create a heightened risk of danger to detainees." *United States v. Milner*, 461 F. Supp. 3d 1328, 1334 (M.D. Ga. 2020) (citations omitted); *see also United States v. Brown*, 457 F. Supp. 3d 691, 695 (S.D. Iowa 2020) ("Already 'tinderboxes for infectious disease,' prisons now are even more dangerous than we typically accept."); *United States v. Beam*, No. 417CR00463MHHGMB1, 2020 WL 7327988, at *4 (N.D. Ala. Dec. 11, 2020) (acknowledging detention facilities are pandemic tinderboxes) (citation omitted); *United States v. Mueller*, 471 F. Supp. 3d 625, 627 (E.D. Pa. 2020) (same).

illness from COVID-19."[20] When a person stopped smoking and how regularly they had smoked does not matter, per the CDC's directive. People with a history of smoking are at high risk of severe illness if they contract COVID-19.

**III.** **This Court has discretion to decide Ms. Bozon's life sentence and improper medical treatment qualify as extraordinary and compelling reasons to release her.**

Ms. Bozon has shown abundant extraordinary and compelling reasons why her serious medical conditions, in light of COVID-19, warrant compassionate release, but the Court may release Ms. Bozon on other grounds. Judges are not bound by the policy statement of § 1B1.13 because the First Step Act made the policy statement "'inapplicable' to cases where an imprisoned person files a motion for compassionate release."[21] *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) (citing *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020)). Courts in this District have agreed with the majority of district courts and the Second, Fourth, Sixth, and Seventh Circuits that courts have discretion to determine what qualifies as extraordinary and compelling circumstances. *See United States v. Cano*, No. 95-CR-00481, 2020 WL 7415833, *2-3 (S.D. Fla. Dec. 16, 2020) (holding that the First Step Act allows the court to determine "extraordinary and compelling reasons independent of the Sentencing Commission's criteria" and granting release of person sentenced to life because of several reasons, including issues with the judgment and disparity in life sentence).[22]

Therefore, courts may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Brooker*, 976

---

[20] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#smoking (Updated Feb. 22, 2021).
[21] *Brooker*, 976 F.3d at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.").
[22] *See also United States v. Castro*, No. 11-CR-80187, 2021 WL 274304, *3 (S.D. Fla. Jan. 26, 2021); DE 468 at n. 41.

F.3d at 237 (noting that a person's rehabilitation "may also interact with the present coronavirus pandemic" to justify a sentence reduction). Courts have considered sentencing disparities, statutory changes in the law, and lengthy sentences in determining whether a person warranted compassionate release.[23] This Court should do the same.

First, the Government praised, explicitly, Ms. Bozon's impressive rehabilitation while incarcerated. DE 471 at 5 (highlighting Ms. Bozon's "commendable record of rehabilitation in the Bureau of Prisons").[24] The Government expressed its modified view of her culpability about an alleged kidnapping. *Id*. at 5-6. The two former Assistant U.S. Attorneys who prosecuted the case support Ms. Bozon's release. *Id*. at 4-6; DE 486 at 1; 13-15; Exhibits 1, 2, 6. These concessions, along with the Government's recognition of Ms. Bozon's "quite serious" health conditions during the pandemic, are additional extraordinary and compelling reasons to warrant her release.

Second, the Government supplied strong proof that Ms. Bozon's sentence is inherently unfair and unjust. As the Government declared,

> [Ms. Bozon] was not a "drug kingpin" or head of a major, vertically-integrated drug trafficking organization such as have sometimes been prosecuted in this District, led by defendants such as defendants Gilberto Rodriguez-Orjuela, Bernal Madrigal, and Hernan Prada. Such drug kingpins dealt in airplane- and freighter-loads of cocaine, smuggling tens of thousands of kilograms into the United States over years of massive trafficking. This defendant's activities, although not quantified in total, were not nearly of that scale.

DE 471 at 5.[25] While the men the Government cited led organizations that involved violence, the Government confirmed that Ms. Bozon and her ex-husband did not engage in any violence against

---

[23] *Brooker*, 976 F.3d at 238; *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020); *United States v. Haynes*, 456 F.Supp.3d 496, 514 (E.D.N.Y. 2020).
[24] For more evidence of Ms. Bozon's rehabilitation, *see* DE 468 at 13-18 and corresponding exhibits #1, 2, 5, 6, 8.
[25] *See also Cano*, 2020 WL 7415833, at *6 (comparing defendant's life sentence, with no history of violence, with the considerably more lenient sentences heads of drug cartels and "many other notoriously violent drug kingpins" received).

others. *Id*. Ultimately, the Government concluded that Ms. Bozon's sentence surpassed "even more serious offenders who have received sentences of less than life imprisonment." *Id*. at 6. Ms. Bozon is serving a life sentence when people responsible for engaging in violence and larger scale drug conspiracies served less time. This sentencing disparity is an additional extraordinary and compelling reason to warrant Ms. Bozon's release.

Third, Ms. Bozon's confinement has been marked by months of lockdowns, isolation in quarantine, fear of infection, and a lack of access to programming, rendering that time in custody particularly brutal and dehumanizing.[26] These harsh circumstances, on top of the stress from knowing she is high risk and could contract COVID-19 at any moment, has made Ms. Bozon's time in custody psychologically unbearable.[27]

Finally, FCI Tallahassee's ability to provide medical care has declined because of the pandemic. As one example, Ms. Bozon reports that when she suffered continued uterus pain and vaginal bleeding in February 2021, she requested a medical appointment. (Ex. 2: Emails with Medical Dept. dated Feb. 14-15, 2021). On February 15, 2021, the medical staff responded that Ms. Bozon could discuss this issue during a future medical visit. *Id*. As of today, Ms. Bozon has yet to see a doctor. While the bleeding has stopped, her ovary pain continues. With Ms. Bozon's

---

[26] In particular, "the pandemic, aside from posing a threat to [a person's] health, has made [his] incarceration harsher and more punitive than would otherwise have been the case. This is because the federal prisons, as 'prime candidates' for the spread of the virus, have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal." *United States v. Rodriguez*, No. 00-cr-761-2, 2020 WL 5810161, at *3 (S.D.N.Y. Sept. 30, 2020) (citations omitted).
[27] *Id*.

history of endometrial concerns,[28] she fears what this pain may mean and whether it will get worse. Ms. Bozon has not received proper care for these medical issues.

FCI Tallahassee is prioritizing the containment of COVID-19 above all else. The cost is to Ms. Bozon's health. In *United States v. Hope*, 90-06108-CR-Williams (S.D. Fla. Mar. 5, 2020), the court granted compassionate release for a person who had served 30 years of a life sentence for drug traffickings and gun possession and needed surgery for a hernia that BOP refused to provide. Ms. Bozon's medical problems, BOP's inability to provide proper care, "the unexpectedly harsh punishment to which [Ms. Bozon] has been subjected,"[29] and other inequities constitute a sufficiently extraordinary and compelling combination of circumstances that warrant release.

### IV. The Warden's letter rejecting Ms. Bozon's compassionate release was wrong.

The Government claims the Warden's September 25, 2020 decision not to release her was correct. Ms. Bozon was morbidly obese, hypertensive, had a history of smoking, and no vaccine when the Warden issued her decision. The Warden's decision was wrong then. It is wrong now.

WHEREFORE, under these extraordinary circumstances, Ms. Bozon respectfully requests that the Court grant compassionate release, reducing her life sentence to time served.

Respectfully submitted,

*/s/ Carla Laroche*
Florida Bar No.:121873
Public Interest Law Center, FSU College of Law
425 West Jefferson Street
Tallahassee, FL  32306-1601
Tel: 850-644-2722
Email: claroche@law.fsu.edu

---

[28] DE 468-4 (Med. Records), including 6-22; 28-32; 100-118; 157-161; 318-20; 395 (describing endometrial biopsy results, concerns Ms. Bozon may have polyps in her cervix, and history of blood in her urine and uterus pain).
[29] *United States v. Henareh*, No. 11-CR-93-1 (JSR), 2021 WL 119016, at *4 (S.D.N.Y. Jan. 13, 2021). *See also Cano*, 2020 WL 7415833, at *7 (holding that BOP was not providing appropriate medical care for individual's hypertension).

**CERTIFICATE OF SERVICE**

      I HEREBY certify that on March 11, 2021, undersigned counsel electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                          */s/ Carla Laroche*
                                          Carla Laroche