## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 95-00084-CR-LENARD

**UNITED STATES OF AMERICA,**

**v.**

**EVELYN CECILIA BOZON PAPPA,**

    Defendant.

_____/

## ORDER GRANTING EVELYN CECILIA BOZON PAPPA'S MOTION FOR COMPASSIONATE RELEASE (D.E. 468)

**THIS CAUSE** is before the Court on Defendant Evelyn Cecilia Bozon Pappa's Motion for Compassionate Release, filed February 16, 2021. ("Motion," D.E. 468.) The Government filed a Response on March 4, 2021, ("Response," D.E. 471), to which Defendant filed a Reply on March 11, 2021, ("Reply," D.E. 475). Thereafter, the Court ordered the Parties to file supplemental materials, (D.E. 474, 478, 480), and the Parties responded, (D.E. 473, 475, 476, 477, 479, 481, 482). Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.

### I.    Background

On February 13, 1995, a Grand Jury sitting in the Southern District of Florida returned a Superseding Indictment charging Defendant with her role in a large drug trafficking enterprise. (D.E. 16.) The same day, a warrant for her arrest was both issued and executed. (D.E. 18, 19, 21.) She has been incarcerated ever since. (PSR at 1.)

On January 22, 1996, the Grand Jury returned a Second Superseding Indictment charging Defendant with conspiracy to import cocaine into the United States in violation of 21 U.S.C. § 963 (Count One); conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 (Count Two); three counts of importation of cocaine into the United States in violation of 21 U.S.C. § 952(a) (Counts Three, Five, and Seven); three counts of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (Counts Four, Six, and Eight); and conspiracy to engage in monetary transactions in criminally derived property in violation of 18 U.S.C. § 1956(h) (Count Nine). (D.E. 153; see also PSR at 1-2.)

Following a ten-day trial, a jury found Defendant guilty on all counts. (Jury Verdict, D.E. 323.)

Prior to sentencing, the United States Probation Office prepared a Revised Presentence Investigation Report ("PSR") reflecting that Defendant's relevant conduct involved the importation of more than 150 kilograms of cocaine into the United States. (PSR ¶ 32.) Based on a total offense level of 44 and a criminal history category of I, Defendant's guideline imprisonment range was life, to be followed by a minimum of five years' supervised release. (Id. ¶¶ 72, 74.)

On September 4, 1997, the Court sentenced Defendant to life imprisonment (consisting of concurrent terms of life as to Counts One through Eight and 240 months as to Count Nine), to be followed by five years' supervised release (consisting of concurrent terms of five years as to Counts One through Eight and three years as to Count Nine). (See Minute Entry for Sentencing Hr'g, D.E. 359; Judgment, D.E. 360.) Defendant appealed,

(D.E. 362), and on August 20, 1999, the Eleventh Circuit Court of Appeals affirmed the

Court's Judgment.  (D.E. 392.)  Mandate issued October 26, 1999.  (Id.)  The United States

Supreme Court subsequently denied Defendant's Petition for Writ of Certiorari.  Bozon

Pappa v. United States, 529 U.S. 1061 (2000).  Defendant filed various post-conviction

motions, (see D.E. 441, 445, 450, 457, 458, 459), all of which were denied, (D.E. 448, 460,

462, 466).  She is currently incarcerated a FCI Tallahassee.

On February 16, 2021, Defendant, through counsel, filed the instant Motion for

Compassionate Release.  (D.E. 468.)  Therein, she argues that her underlying health

conditions—which include obesity and a history of smoking—in conjunction with the

threat of contracting COVID-19 in prison, qualify as extraordinary and compelling reasons

for a sentence reduction to time-served under 18 U.S.C. § 3582(c)(1)(A). (Id. at 4-12.)

## II.    Legal Standard

Title 18, United States Code, Section 3582(c)(1)(A), as amended by the First Step

Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, contains the "compassionate release"

provision.  That statute provides, in relevant part:

> **(c) Modification of an imposed term of imprisonment.**--The court may not
> modify a term of imprisonment once it has been imposed except that—
>
> **(1)** in any case—
>
> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or
> upon motion of the defendant after the defendant has fully exhausted
> all administrative rights to appeal a failure of the Bureau of Prisons
> to bring a motion on the defendant's behalf or the lapse of 30 days from
> the receipt of such a request by the warden of the defendant's facility,
> whichever is earlier, may reduce the term of imprisonment (and may
> impose a term of probation or supervised release with or without
> conditions that does not exceed the unserved portion of the original

term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> **(i)** extraordinary and compelling reasons warrant such a reduction;

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) (2019).[1]

Prior to the First Step Act, the United States Sentencing Commission promulgated a policy statement permitting courts to reduce a defendant's sentence if it determines that: (1) "[e]xtraordinary and compelling reasons warrant the reduction;" (2) "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (3) "[t]he reduction is consistent with this policy statement."  U.S.S.G. § 1B1.13.  The Sentencing Commission further provided the following Application Note regarding what may constitute "extraordinary and compelling circumstances":

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

> **(A) Medical Condition of the Defendant**.—

> **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic

---

[1]     Prior to the First Step Act, only the Director of the Bureau of Prisons could move the Court for a reduction of a prisoner's sentence under this provision.  See Cruz-Pagan v. Warden, FCC Coleman-Low, 486 F. App'x 77, 79 (11th Cir. 2012).  Section 603(b) of the First Step Act amended Section 3582(c)(1)(A) "to permit a defendant to seek compassionate release after fully exhausting administrative remedies for the failure of the Bureau of Prisons to bring a motion on behalf of the defendant, or 30 days after requesting the warden of the facility to bring such a motion."  United States v. Nasirun, Case No. 8:99-CR-367-T-27TBM, 2020 WL 686030, at *2 (M.D. Fla. Feb. 11, 2020).

solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(ii)** The defendant is—

**(I)** suffering from a serious physical or medical condition,

**(II)** suffering from a serious functional or cognitive impairment, or

**(III)** experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant**.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(C) Family Circumstances**.—

**(i)** The death or incapacitation of the caregiver of the defendant's minor child or minor children.

**(ii)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons**.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 n.1 (emphasis added).  Although the Eleventh Circuit has not reached the issue of whether this policy statement is applicable when a Defendant files a motion for reduction of sentence on his own behalf, see United States v. Harris, 989 F.3d 908, 912 n.2 (11th Cir. 2021), several courts have held that it does not apply.  United States  v. Elias,

984 F.3d 516, 519 (6th Cir. 2021); United States v. McCoy, 981 F.3d 271, 284 (4th Cir.
2020); United States v. Gunn, 980 F.3d 1178, 1181 (7th Cir. 2020); United States v.
Brooker, 976 F.3d 228, 235-37 (2d Cir. 2020).

"In seeking a reduced sentence under this framework, the defendant 'bears the
burden of establishing that compassionate release is warranted.'"   United States v.
Rodriguez-Orejuela, 457 F. Supp. 3d 1275, 1282 (S.D. Fla. 2020) (quoting United States
v. Heromin, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019)
(citing United States v. Hamilton, 715 F.3d 328, 341 (11th Cir. 2013))).

## III.   Discussion

Initially, Defendant argues that she has satisfied the statutory exhaustion
requirement.  (Mot. at 4.)  She argues that she submitted a request for compassionate release
to the Warden of FCI Tallahassee on July 17, 2020, and the Warden denied her request on
September 25, 2020.  (Id.)  She attached to her Motion a copy of the Warden's Response.
(D.E. 468-7.)

On the merits, Defendant argues that her underlying medical conditions (which
include, but are not limited to, obesity, a history of smoking, and a history of hypertension),
advanced age (59), and ethnicity (Latina), in conjunction with the threat of contracting
COVID-19 in prison, qualify as extraordinary and compelling reasons for a sentence
reduction to time-served.  (Mot. at 4-12.)  She asserts that she received the first dose of the
COVID-19 vaccine on January 21, 2021, but argues that "CDC guidance warns that
research shows the vaccine may not even be effective on people with obesity."  (Id. at 12
(citing https://www.cdc.gov/obesity/data/obesity-and-COVID-19.html, and Sarah Varney,

6

America's Obesity Epidemic Threatens Effectiveness of Any COVID Vaccine, Kaiser
Health News (Aug. 6, 2020), https://khn.org/news/americas-obesity-epidemic-threatens-
effectiveness-of-any-COVID-vaccine).)   She also argues that the vaccine she received may
not immunize against various strains of the virus.  (Id. at 11.)  She argues that the number
of COVID-19 cases at FCI Tallahassee is "alarming"; for example, on February 5, 2020,
approximately 50% of the inmates who were tested for COVID-19 (370 of 734) tested
positive, and on February 12, approximately 55% of inmates who were tested for COVID-
19 (409 of 749) tested positive.  (Id. at 12 & n.38, 39.)  She further argues that she does not
present a danger to others or to the community, and that the sentencing factors under 18
U.S.C. § 3553(a) support her immediate release.  (Id. at 13-18.)  She states that if released,
she will voluntarily leave the United States, return to her home country of Colombia, and
live with her eldest daughter.  (Id. at 18.)  She states that the Miami Field Office of the U.S.
Immigration and Customs Enforcement, Enforcement and Removal Operations ("ICE
ERO") has agreed to expedite her removal to Colombia.  (Id.)  She states that ICE ERO
"will issue a final removal order that would require Ms. Bozon to report to the ICE ERO
Jacksonville Field Office with her flight travel documents, depart the country, and then
report to the United States consulate in Colombia upon her arrival there."  (Id. at 18-19.)

        The Government opposes the Motion.  (See D.E. 471.)  It agrees that Defendant has
satisfied the exhaustion requirement, (id. at 1), that Defendant does not pose a danger to
others or to the community, (id. at 4), and that the 3553(a) factors support Defendant's
release, (id. at 4-6).  However, it argues that Defendant has failed to establish extraordinary
and compelling reasons for a sentence reduction.  (Id. at 2-4.)  It argues that although

Defendant's obesity and history of hypertension "<u>may</u> be deemed" to qualify as extraordinary and compelling reasons for her release, Defendant's "entire argument about risk from COVID evaporates in light of the fact that she has been vaccinated against it." (<u>Id.</u> at 2-3.)  It argues that Defendant's concerns about the vaccine's potential inefficacy in obese persons and/or against new strains of the virus "are understandable but not well-founded."  (<u>Id.</u> at 3.)  In support of this argument, the Government discusses a report by Dr. Soumya Swaninathan of the World Health Organization, but the URL it provides for the Report does not exist.  (<u>Id.</u>)  It further discusses a Wall Street Journal article, but cites only the generic "wsj.com" rather than providing a link to the actual article.  (<u>Id.</u>)  Finally, it cites an article on "TheConversation.com" without providing a link to the actual article. (<u>Id.</u>)

In her Reply, Defendant maintains that despite receiving the vaccine, she remains at risk of severe illness from COVID-19.  (D.E. 475 at 1-6.)  In support of her argument, Defendant provides the Medical Declaration of Dr. William Weber, MD, MPH.  (D.E. 475-1.)

The Court ordered the Parties to supplement the record with various items including (1) a copy of ICE's Final Administrative Removal Order, and (2) a sworn statement under penalty of perjury from Defendant "that when her term of imprisonment expires she will voluntarily leave the United States."  (D.E. 472.)  On March 11, 2021, the Government filed a copy of ICE's Final Administrative Order.  (D.E. 473 at 3.)[2]  On March 15, 2021,

---

[2]     The Final Administrative Removal Order is attached hereto as Appendix A.

Defendant filed an Affidavit of Consent to Removal in which she states: "When my term of imprisonment ends, I will follow the directions provided by ICE Enforcement and Removal Operations per the terms of my Administrative Removal Order.  I will depart the United States promptly and return to my family in Colombia."  (D.E. 476 at 3.)[3]

First, it is undisputed, and the Court finds, that Defendant has properly exhausted the statutory exhaustion requirement.  (See D.E. 468-7.)

Second, the Court finds that extraordinary and compelling reasons exist for a reduction of Defendant's sentence based on her underlying medical conditions (including obesity) in conjunction with the threat of contracting COVID-19 in prison.[4]  See United

---

[3]     Defendant's Affidavit is attached hereto as Appendix B.

[4]     Although Plaintiff has received a COVID-19 vaccine, Plaintiff submitted evidence that the vaccine may not be completley effective in persons with obesity.  Specifically, Dr. William Weber submitted a Medical Declaration regarding the Medical Care of Evelyn Cecilia Bozon Pappa, (D.E. 475-1), in which he states, inter alia:

> Obesity likely also decreases the effectiveness of the COVID-19 vaccine.  Prior literature demonstrates decreased effectiveness of vaccines in people with obesity, owing to decreased antibody production.  This decrease in antibody production can make vaccines less effective for those with obesity.  For instance, those with obesity who receive the flu vaccine are twice as likely to get the flu as those without obesity who receive the flu vaccine.  Due to the lack of long term data, the precise effects of obesity on the COVID-19 vaccine immune response is not known.  However, preliminary data suggest that those with obesity produce fewer antibodies in response to the vaccine.  Antibodies help the body identify and attack COVID-19 and a lower level of antibodies could mean a decreased ability of the body to respond to exposure to the virus.  This means that Ms. Pappa likely has a lower protective effect from the vaccine.

(D.E. 475-1 ¶ 12 (citing Scott D. Neidich et al., Increased Risk of influenza Among Vaccinated Adults Who are Obese, Int'l J. of Obesity (Lond) (2017), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5585026); Raul Pellini et al. Obesity May Hamper SARS-CoV2 Vaccine Immunogenicity, medRxiv (Feb. 26. 2021), https://www.medrxiv.org/content/10.1101/2021.02.24.21251664v1.full.pdf.).)  At least one court has found that a vaccinated prisoner established extraordinary and compelling reasons for

<u>States v. Weems</u>, 477 F. Supp. 3d 1301, 1309 (S.D. Fla. 2020) (finding that defendant with, inter alia, Type 2 diabetes mellitus and hypertension demonstrated extraordinary and compelling reasons for a sentence reduction due to increased risk from COVID-19); <u>United States v. Feucht</u>, 462 F. Supp. 3d 1339, 1342 (S.D. Fla. 2020) (finding that defendant with, inter alia, Type 2 diabetes mellitus and hypertension demonstrated extraordinary and compelling reasons for sentence reduction based on "heightened vulnerability" to severe illness from COVID-19).

Third, both the Defendant and the Government agree, and the Court finds, that Defendant does not present a danger to others or to the community, and the 3553(a) factors, including that Defendant has served twenty-six years in prison, support Defendant's release.

Accordingly, it is **ORDERED AND ADJDUGED** that:

1. Defendant Evelyn Cecilia Bozon Pappa's Motion for Compassionate Release (D.E. 468) is **GRANTED**;

2. Pursuant to 18 U.S.C. § 3582(c)(1)(A), Defendant Evelyn Cecilia Bozon Pappa's term of imprisonment is hereby **REDUCED** to **TIME-SERVED** to

---

compassionate release based on underlying medical conditions, which included obesity, and the risk of contracting COVID-19 in prison.  <u>United States v. Manglona</u>, Case No. CR 14-5393RJB, Order Granting Motion for Reconsideration and Granting Motion for Compassionate Release, D.E. 205 (W.D. Wash. Mar. 3, 2021) ("Risk appears to remain, but it is reduced to an unknown degree. The Court's conclusion is that vaccination during the pendency of the Motion for Compassionate Release should not, and does not, in some way trump the Court's consideration of the motion."). <u>See also</u> Centers for Disease Control, Overweight & Obesity, Obesity and COVID-19, <u>available at</u> https://www.cdc.gov/obesity/data/obesity-and-covid-19.html (last visited Apr. 1, 2021) ("Hispanic and non-Hispanic Black adults have a higher prevalence of obesity and are more likely to suffer worse outcomes from COVID-19.").

be followed by a total of five years' supervised release with all conditions of supervised release previously imposed, as reflected in the Judgment of September 5, 1997 (D.E. 360), to remain in full force and effect;[5] and

3.     The Federal Bureau of Prisons is **ORDERED** to surrender Defendant to the custody of the Department of Homeland Security for the execution and enforcement of its Final Administrative Removal Order (attached hereto as Appendix A).

**DONE AND ORDERED** in Chambers at Miami, Florida this 1st day of April, 2021.

JOAN A. LENARD
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of record

United States Marshals Service for the Southern District of Florida

---

[5]     Permission to reenter the United States is now granted by the Secretary of the Department of Homeland Security.